UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

CONSIGLI & ASSOCIATES, LLC,
 (f/k/a T.G. NICKEL & ASSOCIATES, LLC)

                              Plaintiff,          Case No. 20-cv-07712-LGS

     -against-

MAPLEWOOD SENIOR LIVING, LLC,

                              Defendant.

───────────────────────────────────────────────

## STIPULATED ORDER ESTABLISHING ESI PROTOCOL, CLAWBACK/NON-WAIVER AGREEMENT, AND CONFIDENTIALITY AGREEMENT

Plaintiff Consigli & Associates, LLC (f/k/a T.G. Nickel & Associates, LLC) ("Plaintiff" or "Consigli") and third parties subject to subpoena, OHI Asset (NY) 2nd Avenue, LLC ("OHI 2nd Ave") and OHI Asset (NY) 93rd Street, LLC ("OHI 93rd Street") (collectively, the "OHI Entities"), have stipulated to the following procedures related to electronic discovery and the exchange of documents related to the above-captioned matter. The parties[1] agree that modifications to this Order may be made in writing by agreement of the parties or by the Court, upon good cause shown, subject to the Federal Rules of Civil Procedure and the Individual Rules and Procedures for Civil Cases of the Honorable Lorna G. Schofield. Upon review of the record, and the parties' representations, the Court determines that there is good cause for adopting the parties' stipulated protocol for electronic discovery, clawback/non-waiver agreement, and confidentiality agreement. Accordingly, it is hereby ORDERED as follows:

---

[1] All references to "parties" herein shall refer to Consigli and the OHI entities, the parties to this Stipulated Order, and not to Defendant Maplewood Senior Living, LLC ("Maplewood").

## I.     DEFINITIONS

A.     **"The Project"** or **"Project"** means the Inspir Assisted and Memory Care Facility located at 1802-1810 2nd Ave., New York, New York.

B.     **"Electronically Stored Information"** or **"ESI,"** as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape, or other real or virtualized devices/media.

C.     **"Document"** is defined to be synonymous in meaning and equal in scope to the usage of the term in F.R.C.P. 34(a)(1)(A).

D.     **"Custodian"** means an individual having administrative control of a document or electronic file which is potentially relevant to this action.

E.     **"Native Format"** means the format of ESI in the application in which such ESI was originally created and/or is currently used.

F.     **"Metadata"** means and refers to information about information or data about data, and includes without limitation: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

G.     **"Extracted text"** means the text extracted from a native file and includes all header, footer, and document body information.

H.  **"Static image"** means a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems (e.g., TIFF image).

I.  **"Load/unitization file"** means an electronic file containing information identifying a set of processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends.  A load/unitization file will also contain data relevant to the individual documents, including extracted and user-created metadata and coded data, as well as OCR or extracted text.

J.  **"Media"** means an object or device, including but not limited to a disc, tape, computer, or other device, whether or not in the producing party's physical possession, on which data is or was stored.

K.  **"Bates number"** refers to a numbering system used to identify individual pages of documents where each page (or native file) is assigned a unique, sequential number, used in conjunction with a designated prefix to identify the producing party.

## II.  NON-EMAIL ESI

A.  <u>Production of Project-Related ESI</u>: The OHI Entities will produce categories of ESI that can easily be identified and isolated (e.g., non-email data stored in a project/case-specific network-drive subfolder) without the use of search terms or other agreed-upon advanced search methodology. Non-email ESI shall be the subject of manual searches by the OHI Entities to the extent that Documents responsive to Consigli's document requests exist in non-email ESI or hard copy format, subject to the removal of any privileged / irrelevant documents, and pursuant to the technical specifications

in section IV, below, the producing party shall produce all responsive documents in the relevant file folders.

III.   **EMAIL DISCOVERY**

    A.   <u>Document Custodians:</u>

        **1.**   The OHI Entities identify the following Custodians from within their organizations who are knowledgeable about and were involved with the core issues or subjects of this case, and will produce responsive, non-privileged email discovery from those custodians, to the extent it exists.

            **a.**   **Custodians identified by the OHI Entities:**

                **1.  Jason Baylin**

                **2.  Vikas Gupta**

                **3.  Steven Insoft**

                **4.  Sam Kovitz**

                **5.  Megan Krull**

                **6.  Steve Levin**

                **7.  Gary Neil**

                **8.  Michelle Reber**

                **9.  Mark Rogers**

                **10. Kyle Sweeney**

    B.   <u>Agreement on Search Terms</u>:

        1.      No later than **July 27, 2021**, Consigli shall submit a list of proposed search terms to the OHI Entities to include up to ten (10) search terms to be applied against their Custodian emails (or such other number as to which the parties shall agree), as well as the time

4

period for which each Custodian's email shall be provided.  No later than August 6, 2021, Consigli and the OHI Entities shall meet and confer and reach agreement on the search terms to be used for electronic searches of the emails from the Custodians identified herein.  The parties agree to use their best efforts to negotiate in good faith the final lists of search terms and time periods.

2.      Notwithstanding prior agreement on the search terms to be used for electronic searches, should a search produce an unreasonably large number of non-responsive or irrelevant results, the parties shall (at the producing party's request) meet and confer to discuss application of further negative search restrictions (e.g., if a single search was for "card" and ninety percent of the resulting documents came from the irrelevant term "credit card," a negative limitation to ignore documents only returned as a result of "credit card" may be applied to remove these documents).  The party receiving production shall not unreasonably oppose such further restrictions designed to filter immaterial search results. To the extent that the parties are unable to agree upon a final list of search terms and time periods, they shall seek guidance from the Court.

C.      Application of Search Terms:  Search terms pursuant to section III(B) shall be applied to all Custodians identified pursuant to section III(A) above.  All queries will be run in a non-case sensitive manner, except as otherwise specifically provided in the preliminary search term list.

D.      Production of Custodian Emails:  Subject to the removal of any privileged or irrelevant documents, and pursuant to the technical specifications set forth in section IV, below, the OHI Entities shall produce the Custodian emails hitting on one or more search terms on a rolling basis.

E.     Privilege Logs: The parties agree that the OHI Entities will not be required to produce, privilege logs for documents withheld for attorney-client privilege or under the work product doctrine.  Consigli reserves the right to seek disclosure of any documents which it believes exist and were improperly withheld under a claim of privilege.

## IV.     TECHNICAL SPECIFICATIONS FOR PRODUCTION OF ESI

A.     ESI Production Format: ESI shall be produced electronically as single page, uniquely and sequentially numbered TIFF image files not less than 300 dpi resolution to enable the generation of searchable text using Optical Character Recognition ("OCR"), with the exceptions outlined in Section B below.  Where text may be extracted when the TIFF image file is generated, the image file shall be accompanied by a text file containing the extracted text.  The text files shall be named to match the endorsed number assigned to the image of the first page of the document.  The producing party shall apply an OCR process to the produced image and text files to generate text searchable files.  The images and text files shall also be accompanied by image cross-reference load files in the formats reasonably requested by each party providing the beginning and ending endorsed number of each document and the number of pages it comprises. The producing party shall also provide a data load file ("Data Load File") corresponding to the TIFF image files and the full text files that shall contain the requested metadata as defined below. Data Load Files will be provided in Relativity style (.opt and .dat) format or in the format requested by Consigli.

B.     Native Files: The parties acknowledge that production in TIFF format may be inadequate for certain types of ESI (e.g., spreadsheets, CAD files, scheduling/P6 files). The producing party will produce in native format all audio, video, drawing/autocad, schedule/P6 and spreadsheet-type files, including but not limited to Microsoft Excel and CSV.  Microsoft

PowerPoint documents do not require production in native format, unless they contain video.  To the extent that either party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph, the receiving and producing parties shall confer in good faith.  The producing party shall use reasonable efforts to avoid producing system and application files.  The receiving and producing parties will discuss any specialized database files (i.e., Microsoft Access, SQL, SAP, etc.) that are responsive to the parties' requests and reach agreement on the most reasonable form of production before any such production is made.  During the confer process, the producing party shall provide information concerning the available database fields sufficient to determine the most reasonable form of production.  Any native files that are produced shall be produced with all extracted text and applicable metadata fields set forth in section IV(D).  To the extent native files are produced without an accompanying rendering of TIFF images, a slip-sheet will be produced in TIFF format to facilitate Bates and confidentiality stamping.  The parties shall confer to agree upon a protocol for the use of native files during the pendency of this action.  If documents requested in native format require redactions, the parties will produce TIFF images for those documents, except that for Excel and spreadsheet files, the parties will confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.  The native files shall be produced in a folder named "Natives."

      B.    <u>Attachments</u>: The OHI Entities shall produce email attachments sequentially after the parent email.  The parties shall confer at a later date over the inclusion of embedded files in document productions.

      C.    <u>Structured Data</u>: Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery

of admissible evidence.  Thus, a producing party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table.  These reports or data tables will be produced in a static format. The producing parties agree to identify the specific databases, by name, that contain the relevant and responsive information that parties produce.

D.   <u>Metadata</u>:  The producing parties agree to produce the following list of metadata fields (to the extent available) to accompany each produced ESI file.  Unless otherwise specified, by producing metadata, the producing party affirms that such metadata came, in unaltered format, from its records, with the exception of vendor-entered source/Custodian and document/production number fields.  However, the producing parties are not obligated to include metadata for any document that does not contain such metadata in the original. The following list identifies the metadata fields that will be produced (to the extent available):

- ProdBeg (Bates number of the first page of a document)
- ProdEnd (Bates number of the last page of the document)
- AttachBeg (Bates number of the first page of a parent document)
- AttachEnd (Bates number of the last page of the last attachment to a parent document)
- Page Count (number of pages in a document)
- File Title (title data for electronic documents)
- Subject (for emails only)
- Sent Date & Time (for emails only)
- Last Modified Date & Time
- Parent Date & Time
- File Name (for both electronic documents and attachments to an email)
- File Extension
- File Author
- File Path
- From (for emails only)
- To (for emails only)
- CC (for emails only)
- BCC (for emails only)
- Custodian
- Confidentiality
- Redactions
- MD5 or SHA-1 Hash Value

Notwithstanding the foregoing, the receiving and producing parties will confer in good faith prior to the production of documents, with their respective vendors/eDiscovery staff as needed, to clarify or resolve any issues (e.g., definitions of metadata fields, inconsistencies, burden) concerning the production of metadata and will modify this order to reflect any changes hereto.

E.      <u>Duplicates</u>:   To the extent identical copies of documents (i.e., documents with identical hash values) appear in the production, the producing party shall make reasonable efforts to produce only one such identical copy across all Custodians.

F.      <u>Encrypted or Password-Protected ESI</u>:  For any ESI that exists in encrypted format or is password-protected, the producing party shall undertake reasonable efforts to provide the receiving party a means to gain access to the files.  In the event that files are not decrypted prior to production, the receiving and producing parties shall meet and confer in an effort to supply passwords and other information that will enable the receiving party to obtain access.

G.      <u>Document Image Format</u>:   With the exception of databases and native ESI discussed in sections IV(A)-(B), or unless otherwise agreed to in writing by the requesting party, ESI shall be produced electronically as a single-page, Group IV, 300 DPI TIFF image.  The TIFF images shall be produced in a folder named "Images."

H.      <u>Redactions</u>:  All redactions of a static image should be clearly indicated on the static image.

I.      <u>Color</u>:  If an original document contains color, the document may be produced as a black and white TIFF image as set out in section IV(J) below, subject to the provisions of section IV(A) above regarding native files.  However, in order to address situations where color may be necessary to most fully understand the content or meaning of a particular document or documents,

the receiving parties reserve the right to request production of color documents in native or JPEG format from the producing party at a later date.

J.   <u>Document Unitization</u>:   For files produced as TIFF images, each page of a document shall be electronically saved as an image file.  If a document consists of more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it existed when collected by the producing party.  If unitization cannot be maintained, the original unitization shall be documented in the Data Load File or otherwise electronically tracked. For ESI, all unitization should be defined within the Data Load File, including the designation of parent/attachment for both email and attachments and for compressed files (such as .zip or .rar files) and their contents.

K.   <u>Bates Numbering and Other Unique Identifiers</u>:   Each static image page of a produced file shall be named with a Bates number for each page, followed by the extension ".tif." For example, if a native file is converted to three (3) static images, the produced images shall be named "ABC-00000001.tif," "ABC-00000002.tif," and "ABC-00000003.tif."  For files produced as TIFF images, each page of a produced document shall have a Bates number electronically endorsed onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with.  In the event that a native file is produced and the receiving party prints it for use as exhibits to briefs, depositions, or trial, each page will be endorsed using a suffix for page identification purposes.  For example, if document "ABC-00000001" is produced as a native file and printing the file results in three (3) pages of printed paper, the pages will be endorsed and identified as "ABC-00000001_001," "ABC-00000001_002," and "ABC-00000001_003."   Any party producing ESI in a native data format only shall produce a corresponding slip sheet in TIFF format, as described in section IV(G) herein.  However, if

employing the above method for production of ESI in a native format only is unduly burdensome or costly to the producing party, the parties shall confer over whether the producing party may employ a different method for purposes of identification, such as a storage device (i.e., CD, flash drive, hard drive) containing such files, which shall be Bates numbered.

L. <u>Extracted Text and OCR Files</u>:  For each document produced in TIFF format, a single text file shall be provided along with the image files and the metadata.  The text file name shall be the same as the Bates number of the first page of the document.  File names shall not have any special characters or embedded spaces.  Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs).  In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. Extracted text shall be provided in UTF-8 format text format. The text files shall be produced in a directory named "Text" or "OCR."

M. <u>Production Media</u>:  Documents shall be produced via flash drive or external hard drive (with standard PC-compatible interface), file transfer site or FTP, or such other readily accessible computer or electronic media as the requesting and producing parties may hereafter agree upon (the "production media").

N. <u>Time Zone</u>:  To the extent any ESI (e.g., emails) contains an option to select a time zone, all productions shall be made using U.S. Eastern Time Zone, the time zone applicable in the Project location.  This will enable consistency for purposes of deduplication of emails and other electronic documents and will create uniformity such that the chronology of emails and other documents can be easily ascertained.

## V.       APPLICABILITY

A.       The procedures and protocols set forth in this Protocol shall govern the production of Documents by the OHI Entities pursuant to subpoena in this action, but shall not govern the production of Documents between Plaintiff and Defendant, which is governed by prior Order of the Court (Dkt. No. 62).  Any practice or procedure set forth herein may be varied by written agreement of the parties.

B.       Nothing in this Protocol creates an obligation by the producing party to produce ESI on back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium.

C.       No producing party shall be obligated under this Protocol to produce any ESI that is no longer within its possession, custody or control (*i.e.*, lost or deleted) as a result of the good-faith operation of an electronic information system or document retention policy, unless the Party requesting such ESI establishes that there is good cause to believe that the party from whom such ESI is being requested intentionally or recklessly failed to preserve, deleted or destroyed the ESI while under an obligation to retain it.

D.       Notwithstanding anything to the contrary herein, the following document types are not discoverable in this action except upon a showing of good cause:

a.       Recorded telephone messages, including voice-mail in the Avaya Voice (.lvp) or Waveform Audio File (.wav) file formats.
b.       Instant messaging and texting communications.
c.       Back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium.
d.       Temporary data stored in a computer's random access memory or RAM.
e.        Recorded videoconferences, including through Teams or ZOOM.

The parties shall meet and confer to resolve any disputes that arise under this Agreement. In the event the parties cannot reach agreement on a disputed matter, they may submit the matter to the Court.

## VI.    RIGHT TO SEEK ADDITIONAL DISCOVERY

The parties agree that they shall proceed in good faith in all respects concerning the production of documents and ESI hereunder.  Nothing in this Protocol is intended to limit a party's ability to seek additional discovery either by negotiation or by seeking, upon good cause and demonstration of need, relief from the Court.

## VII.    CLAWBACK/NON-WAIVER AGREEMENT

A.    The inadvertent production by a producing party of documents or ESI ("Discovery Material") subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection will not waive the applicable privilege and/or protection if a request for return of such inadvertently produced Discovery Material is made, regardless of the degree of care taken to prevent said disclosure, except that:

1.    Affirmative use of ESI or a document by the producing party in the case (e.g., as an exhibit to a pleading, deposition, hearing, etc.) waives privilege and protection with respect to it; and

B.    If the receiving party discovers material or documents that appear to be privileged in the producing party's document production, the receiving party will immediately notify the producing party of such discovery and seek direction as to whether such material or document was inadvertently produced.  If the producing party identifies such material or document as privileged, the parties shall proceed in accordance with subparagraph C below.

C.      Upon a request from the producing party who has inadvertently produced Discovery Material it believes is privileged or protected, the receiving party shall immediately return such or certify destruction of the protected Discovery Material and all copies to the producing party (subject to the provisions of subparagraph VII.D below), except for any pages containing privileged markings by the receiving party which shall instead be destroyed and certified as such by the receiving party to the producing party.

D.      In the event the receiving party disagrees with the claim of privilege, the receiving party may sequester all such material that is subject to a claim of privilege and write the party claiming privilege stating the reasons why it disagrees within five (5) days of receiving written notice of any claim for a clawback.  In the event that there is a dispute over whether the material at issue is privileged, the receiving party shall not further use or disclose the material unless and until the Court  finds that the material is not privileged.  The receiving party shall cease using any work product setting forth material subject to the claim of privilege in the clawback until determination of the privilege claims.  If the Court ultimately finds that the material is privileged, the receiving party shall return and/or destroy the privileged material and destroy any portions of work product containing the material as to which the privilege is sustained, within three (3) days of the Court's finding.  Either the receiving party or the producing party may move the Court  to resolve the dispute, but it shall be the burden of the party claiming privilege to establish the grounds for the privilege claimed.

X.      **CONFIDENTIALITY AGREEMENT**

A.      The producing party has the right to designate as confidential, in whole or in part, any discovery material in this action that the producing party believes in good faith contains confidential commercial or financial information or any other proprietary or confidential business

or personal information ("Confidential Discovery Material").

B.    Confidential Discovery Material produced in this case, and copies thereof, and the information contained therein, shall be made available to and inspected by the following persons only:

1.    The parties, their officers, employees, and agents who are assisting in prosecuting or defending this action;

2.    Counsel for the parties and their assistants, paralegals or other persons associated with counsel, whose assistance is required by said attorneys in the defense or prosecution of this action;

3.    In-house counsel, if any, for the parties and their assistants, paralegals or other persons associated with in-house counsel, whose assistance is required by said attorneys in the defense or prosecution of this action;

4.    Expert witnesses and consultants, and their employees, who are directly employed or retained by the parties or by counsel for the parties, to the extent that such disclosure is necessary for the prosecution or defense of this action;

5.    Any court reporters at proceedings in this action as well as any independent court reporters;

6.    Document handling, photocopying, or Electronically Stored Information ("ESI'') consultants or companies retained by any party or counsel; and

7.    Any person who would be entitled to review the Confidential Discovery Material as a result of contractual obligations such as agreements with insurers or reinsurers or pursuant to local, state, federal or other laws.

C.    Prior to receiving any Confidential Discovery Material under this Agreement, the Persons described in sections X(B)(1) – X(B)(7) must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all parties.

D.    All Confidential Discovery Material, including all copies and information obtained from such discovery material, shall, subject to the provisions hereof, be used by the person receiving it only in connection with prosecuting or defending this action. Confidential Discovery Material shall not be used for any other purpose and shall not be disclosed to any

person, or entity, except as provided herein.

     E.    The parties, as applicable, shall designate Confidential Discovery Material as follows:

     1.    In the case of documents or other submissions, designation shall be made by stamping the document or submission *"Confidential"* at the time of production or otherwise notifying the receiving party that the documents (or group of documents) should be treated as Confidential Discovery Material.  Inadvertent failure to designate a document as "Confidential" may be corrected by supplemental written notice given as soon as practicable.  In the event that counsel for any party determines that the other party has obtained Confidential Discovery Material through a third-party subpoena or other form of legal process, said party may designate a document as "Confidential" by providing written notice given as soon as practicable, at which time the receiving party shall stamp the legend *"Confidential."*

     2.    In the event the producing party elects to produce documents and things for inspection, no marking need be made by the producing party in advance of the initial inspection.  For purposes of this initial inspection, all documents and things will be considered as stamped Confidential.  Thereafter, upon selection of specified documents for copying by the inspecting party, the producing party shall mark the copies of such documents as may contain protected subject matter with the appropriate confidentiality marking at the time the copies are produced to the inspecting party, or notify the receiving party as soon thereafter as reasonably practicable that the documents (or group of documents) should be treated as Confidential Discovery Material.

     F.    The persons described in sections X(B)(1) – X(B)(7) shall have access to the Confidential Discovery Material once they have reviewed the provisions of this Confidentiality

Agreement and have agreed to be bound by the provisions of this Confidentiality Agreement by signing a copy of Exhibit A. The persons receiving Confidential Discovery Material are prohibited from disclosing it to any other person except in conformance with this Confidentiality Agreement.

G.     In the event that counsel for any party determines that the prosecution or defense of this action requires that Confidential Discovery Material be disclosed to persons not otherwise authorized herein, such counsel shall provide the other party (including any third party subject to subpoena if applicable) with written notice by email or hand delivery of the intended disclosure (which shall specify with particularity the Confidential Discovery Material to be disclosed and the identity of the otherwise unauthorized person). This written notice shall be given not less than five (5) business days prior to intended disclosure. If within five (5) business days after receipt of such notice a party objects in writing to such disclosure, the documents produced pursuant to this Confidentiality Agreement shall be treated as Confidential unless the Court orders otherwise.

H.     In the event that either party receives a third-party subpoena or other form of legal process requesting Confidential Discovery Material produced in this action, the party receiving such request will provide the initial producing party written notice by email or hand delivery that such a request was received and provide a copy of the request with the written notice. The party receiving the third-party subpoena or other form of legal process shall provide notice by email or hand delivery of the request to the initial producing party within five (5) business days of receiving the subpoena and shall not produce the requested documents before its return date, unless the initial producing party states in writing that it does not intend to seek protection in connection with the third-party subpoena or other form of legal process concerning the

Confidential Discovery Material.  If the subpoena requires production of Confidential Discovery Material in less than fifteen (15) days, the party must provide written notice to the initial producing party by email upon receipt of the subpoena.

I.      This Confidentiality Agreement is intended solely for the purpose of facilitating the exchange of information between Consigli and the OHI Entities in the above-referenced action, and confidential information disclosed will be held and used solely in connection with this action.  Neither this Confidentiality Agreement, nor the production of any information under its terms, nor any proceedings undertaken pursuant hereto, shall be deemed to have the effect of any admissions or waiver by any party of, or otherwise deemed to alter the confidentiality or non-confidentiality of, any protection or privilege available as to that information. Compliance with this Confidentiality Agreement shall not operate as an admission as to the admissibility, materiality or relevance of any information, or as an admission that any objection has or has not been validly or timely asserted. All objections with respect to admissibility, relevance, materiality of any information are specifically reserved.

J.      By signing this Confidentiality Agreement, the parties are not deemed to have consented or agreed to the production of any document, testimony or information or to have waived any objection to the production or use of any document, testimony or information in this or other action or waived any applicable privilege or legal protection. The placing of any *"Confidential"* designation on the face of a document produced shall have no effect on determining the authenticity or admissibility of that document at trial.

K.      This Confidentiality Agreement is without prejudice to the right of either party: (a) to apply to the Court for a protective order relating to any Confidential Discovery Material relating to any discovery or privilege in this action; (b) to object to the production of documents

it considers privileged or not subject to discovery; or (c) to apply to the Court for an order compelling the production of documents.  Nothing herein shall prevent disclosure beyond the terms of this Confidentiality Agreement if the person or party designating the material as confidential specifically consents in advance in writing to such disclosure.

L.      At the conclusion of this action, all discovery material labeled *"Confidential,"* including all copies, extracts and summaries and all documents containing information taken therefrom, shall be destroyed no later than thirty (30) days after final award or settlement of this action, except that counsel of record may retain one copy of the pleadings, correspondence and attorneys' notes relating to this action, subject to the other terms of this Confidentiality Agreement.  As to such discovery, including copies, extracts, or summaries containing attorney work product, such documents may be destroyed by the receiving party in lieu of returning such items to the producing party.

M.      This Confidentiality Agreement shall be effective from the date on which it is entered and shall apply and be enforceable with respect to all discovery in this action, including material previously produced to the other party, that any party seeks to designate as *"Confidential"* pursuant to the terms of this Order.

N.      In the event a party violates any term of this Confidentiality Agreement, the parties hereby agree that the Court shall have the authority, if warranted by the circumstances surrounding such violation, to enter sanctions against the violating party, including but not limited to monetary sanctions, injunctive relief, and/or awarding such other relief to the non-violating party(ies) as may be appropriate.

**VIII.        Method of Conducting Depositions**

The parties agree that the party noticing a deposition shall elect whether the deposition

will be held in person or if it will be held remotely via videoconference (i.e. Zoom). The

deponent and his or her counsel will make a reasonable effort to comply in good faith with the

noticing parties' elected method of conducting the deposition. However, in the event that the

deponent and/or counsel have a specific articulated health or travel concern, the deposition

shall be held remotely via videoconference upon their request.


Respectfully submitted,                         Dated: July 26, 2021

| | |
|---|---|
| By:  _s/Luke R. Conrad_<br>Luke R. Conrad<br>HINCKLEY, ALLEN & SNYDER LLP<br>30 South Pearl Street<br>Albany, New York 12207<br>Telephone: 518-396-3100<br>lconrad@hinckleyallen.com<br><br><br> _Attorneys for Plaintiff_ | By:  _s/ Jeffrey M. Haber_<br>Jeffrey M. Haber<br>FREIBERGER HABER LLP<br>425 Broadhollow Road, Suite 417<br>Melville, New York 11747<br>Telephone: 631-282-8985<br>jhaber@fhnylaw.com<br><br>_Attorneys for the OHI Entities_ |

The parties are advised that the Court retains discretion as to whether to afford confidential treatment to redacted information in Orders and Opinions.  Documents may be filed under seal only as provided in Individual Rule I.D.3.

IT IS SO ORDERED this  27th  day of July, 2021.

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT A

## Agreement to Be Bound by Protective Order

I,_____, acknowledge and declare that I have received a copy of the Confidentiality Agreement ("Agreement") between Consigli and the OHI Entities in CONSIGLI & ASSOCIATES, LLC (f/k/a T.G. NICKEL & ASSOCIATES) v. MAPLEWOOD SENIOR LIVING, LLC, United States District Court for the Southern District of New York, Civil Action No. 20-cv-07712-LGS.  Having read and understood the terms of the Agreement, I agree to be bound by the terms of the Agreement and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Agreement.

Name of individual:_____

Present occupation/job description: _____

_____
_____

Name of Company or Firm:_____

Address:_____


Dated:_____


_____
[Signature]

1212283/57569354v.1