UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

CONSIGLI & ASSOCIATES, LLC,                    Case No.: 20-cv-07712-LGS
 (f/k/a T.G. NICKEL & ASSOCIATES, LLC)

                              Plaintiff,        Hon. Lorna G. Schofield

        -against-


MAPLEWOOD SENIOR LIVING, LLC,


                              Defendant.
------------------------------------------------------------X


**DEFENDANT/COUNTERCLAIM PLAINTIFF'S MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION FOR RECONSIDERATION</u>**


GORDON REES SCULLY MANSUKHANI, LLP

Peter E. Strniste, Jr., Esq.
One Battery Park Plaza, 28th Floor
New York, New York 10004
Tel.: (212) 269-5500
Fax: (212) 269-5505

## PRELIMINARY STATEMENT

Pursuant to Local Civil Rule 6.3, Defendant/Counterclaim Plaintiff Maplewood Senior Living, LLC ("Maplewood") respectfully requests that this Court reconsider its March 14, 2022 Order (ECF No. 175, "Order"), and deny Plaintiff/Counterclaim Defendant Consigli & Associates, LLC's (f/k/a/ T.G. Nickel & Associates, LLC) ("Consigli") request set forth in its letter motion dated March 9, 2022 (ECF No. 164, "Letter Motion") that the subpoena Maplewood issued to Alliant Insurance Services, Inc. ("Alliant") on March 4, 2022 ("Subpoena") be quashed.

## BACKGROUND

On March 4, 2022, Maplewood issued the Subpoena to Alliant, seeking production of the following limited categories of documents: (i) documents relating to the actual costs of the payment and performance bonds issued on behalf of Consigli, as principal, on the construction project ("Bonds"); (ii) documents relating to the actual costs of the Contractor Controlled Insurance Program on the construction project ("CCIP"); (iii) documents relating to the actual costs of the Subguard insurance policy issued on the construction project ("Subguard"); and (iv) communications between Alliant and Consigli relating to the actual costs of the Bonds, CCIP, and/or Subguard.

Thereafter, on March 9, 2022, Consigli filed the Letter Motion requesting, *inter alia*, that the Court quash the Subpoena. In support of the relief requested in the Letter Motion, Consigli argued that (i) the Court previously denied Maplewood's request for discovery in relation to its fraud claim against Consigli, as Maplewood represented that no additional discovery would be needed in relation to such claim; and (ii) as such, Maplewood should not be permitted to serve the Subpoena close to the end of fact discovery, with a return date after the end of fact discovery. *See* Letter Motion, pp. 1-2.

On March 11, 2022, Maplewood filed a response to the Letter Motion (ECF No. 170, "Response"), arguing, *inter alia*, that Maplewood only recently discovered the need for the documents and communications sought through the Subpoena, as Consigli's corporate designees, who should have been able to testify as to the costs of the Bonds, CCIP, and Subguard, were unable to do so. *See* Response, p. 1. Maplewood further argued that it had rationally believed that it did not need additional discovery in relation to its fraud claim, beyond what had been scheduled to take place, as Consigli's corporate designees, one of whom had yet to be deposed, should have been able to speak to the aforementioned costs. *Id*. Notwithstanding the foregoing, neither of Consigli's corporate designees were able to testify as to such costs. *Id.*, p. 2. Accordingly, Maplewood was justified in serving the Subpoena the day after the deposition of Consigli's second corporate designee, and in advance of the March 7, 2022 discovery deadline. *Id*.

On March 14, 2022, the Court issued the Order, granting the relief sought in Consigli's Letter Motion. The Order specifically provided that:

> Discovery has now closed in this matter following multiple extensions. Maplewood previously represented to the Court that no further discovery would be necessary in relation to the information at issue in the subpoena. Maplewood states that it expected Consigli's 30(b)(6) witnesses to testify as to the information sought in the subpoena. However, other than a note about the role of a 30(b)(6) witness in general, Maplewood points to no information to suggest that Consigli's 30(b)(6) witnesses should have been prepared to speak about the information sought. As a result, Maplewood's belief that those witnesses would have provided the information is unreasonable.

Maplewood now respectfully requests that the Court reconsider its Order and deny the relief requested in the Letter Motion, for the reasons set forth herein.

## **ARGUMENT**

### A.   **Standard of Review**

A motion for reconsideration may be granted due to "an intervening change of controlling

law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citations omitted). Relief pursuant to a motion for reconsideration is appropriate where "the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision." *See Enzo Biochem, Inc. v. Johnson & Johnson*, 866 F. Supp 122, 123 (S.D.N.Y. 1994) (citations omitted). The decision to grant a motion for reconsideration "is within the sound discretion of the district court", which decision may be made in the interest of justice. *See Suarez v. Big Apple Car, Inc.,* No. 15 Civ. 5330 (AMD) (RLM), 2017 WL 9400686, at *1-*2 (E.D.N.Y. Dec. 1, 2017).

**B.     Maplewood's Belief that Consigli's 30(b)(6) Witnesses Would Testify
to Costs of the CCIP, Subguard, and Bonds Was Reasonable.**

As set forth in Maplewood's Response, Consigli produced Matthew Burger and Douglas Renna for depositions in response to Maplewood's 30(b)(6) corporate designee deposition notice. A copy of Maplewood's amended 30(b)(6) deposition notice, dated January 10, 2022, is annexed hereto as Exhibit A ("30(b)(6) Notice"). The 30(b)(6) Notice provides that "pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Consigli is required to designate and produce at the deposition those directors, managing agents, employees, or other persons most qualified to testify on its behalf as to the subjects of examination specified in Schedule A below." Ex. A, 30(b)(6) Notice, p. 2. Schedule A to the 30(b)(6) Notice sets forth the following topics of examination, amongst others:

> 69.     Consigli's subcontractor default insurance for the Project including premiums paid by Consigli, claims asserted against such insurance and any credits received by Consigli on any payments paid.

> 71.     Consigli's CCIP policy for the Project including premiums paid for said insurance, claims asserted against said insurance

and any premium credits received by Consigli with respect to said
insurance.

Ex. A, 30(b)(6) Notice, pp. 14-15. Other relevant examination topics set forth in the 30(b)(6)

Notice include (i) Consigli's bidding on the project and negotiation of its contract, (ii)

formulation/calculation of the project's guaranteed maximum price, (iii) actual costs incurred by

Consigli in connection with performing work on the project, (iv) Consigli's financial records

concerning the project, (v) Consigli's communications with any insurer or surety company

regarding the project and insurance premiums, and (vi) Consigli's communications with its CCIP

carrier for the project regarding any claims asserted against said policy. *See* Ex. A, 30(b)(6) Notice,

pp. 6-14. Attached as Exhibit B is a chart designating which Consigli witness was assigned to

testify to each respective examination topic from Maplewood's 30(b)(6) Notice ("Designation of

30(b)(6) Witnesses"). As set forth in the Designation of 30(b)(6) Witnesses, either Matthew

Burger, Douglas Renna, or both, were designated to testify as to each of the examination topics.

Accordingly, Maplewood respectfully submits that the Court's finding that it was

unreasonable for Maplewood to believe that Consigli's corporate designees would testify as to the

information sought by the Subpoena constitutes an error which should be corrected through the

granting of this motion for reconsideration.  Maplewood believes that, to the extent the Court found

Maplewood's position to be reasonable, such finding would have affected the Court's decision set

forth in the Order.

**C.     Consigli's 30(b)(6) Witnesses Were Not Able to Testify
        to Costs of the CCIP, Subguard, and Bonds.**

Notwithstanding the content of Maplewood's 30(b)(6) Notice, Consigli's corporate

designees, Matthew Burger and Douglas Renna, were not able to knowledgably testify as to the

actual costs of the CCIP, Bonds, or Subguard. By way of example, when Mr. Burger was asked

whether the amount stated in the contract for costs of the Bonds represented the actual premium paid to the surety, or whether the amount included mark-up, Mr. Burger testified that "[i]t is the actual cost plus our risk to carry that policy." Burger Dep., 122:8-24. When questioned about this further, Mr. Burger testified as follows:

> Q:       Is there any mark-up other than the premium that gets paid to the insurance company?
>
> A:       Not to my knowledge. There is a risk to carrying a policy. Our costs are based on a tipped rate and it covers our costs for the premium plus our risk for carrying the policy.
>
> Q:       Can you explain to me – I don't understand. As a layman, what does that mean your cost of carrying the policy? Are you talking about an additional cost you have to pay out of pocket in addition to the premium to the insurance policy?
>
> A:       Potentially.
>
> Q:       Well, is it or isn't it?
>
> A:       It depends. Most of these policies remain open for years.

*Id.*, 123:24-124:13. Mr. Burger similarly opaquely indicated that there were amounts included in the contractual CCIP and Subguard rates seemingly attributable to Consigli's "risk", on top of the respective premium costs. *Id.*, 129:22-132:24.

Douglas Renna's deposition testimony served to convolute matters further. Mr. Renna testified that there are several items that form the basis of the stipulated CCIP rate as set forth in the contract, including, *inter alia*, the actual cost of the premiums associated with the program, and costs associated with the "loss fund". Renna Dep., 157:8-158:21. With regard to the "loss fund", Mr. Renna testified as follows:

> Q:       And the loss fund, is that money that is held by the insurance company or is it held by Consigli?

> A:        I believe that money is held by Consigli, but I am not 100 percent sure. It may be set up in some sort of escrow account. I am not 100 percent sure financially how that works.
>
> Q:        So one portion of it is the premium cost that gets paid to the insured just like a standard insurance policy. Right?
>
> A:        That is correct, yes.
>
> Q:        And the other aspect of it is this loss fund which exists to satisfy claims. Correct?
>
> A:        That is correct.
>
> Q:        You are not sure that is paid over to the insurance company or whether it's held in a special account by Consigli?
>
> A:        I am not 100 percent sure. Financially, I do not know how that aspect of the CCIP works and how the claims get paid out. So I know the money the money is requisitioned and paid by Maplewood. And then obviously, we pay the insurance carrier for the premium associated with the policy. And I think we also hand over the money for the carrier to hold in escrow, but I am not 100 percent sure.

*Id*., 155:14-156:14. With regard to Subguard, Mr. Renna indicated that, "[s]o there are costs – you know, it functions similar to how a CCIP is priced. There is physical premium associated with it. There is administrative costs and there are costs associated with losses." *Id*., 193:10-24. With regard to the aforementioned administrative costs, Mr. Renna indicated that he was "not 100 percent sure" how they are charged to Consigli. *Id*., 194:16-24. Finally, with regard to costs of the Bonds, Mr. Renna indicated that "[s]o again, it is based on contract terms, risk, other factors, length of the project, duration of the bond requirements. So there are a bunch of different factors that come into it. So I couldn't specifically tell you, you know, how the insurance gurus came up with a rate, but this is the rate that was presented and eventually included in our contract." *Id*., 196:25-197:8, 197:22-198:13.

    In sum, even after the depositions of Consigli's corporate designees, it is still not clear what

costs Consigli actually incurred in relation to the CCIP, Subguard, and Bonds procured for the construction project.

### D.     Maplewood's Motion for Reconsideration Should Be Granted in the Interest of Justice and to Correct a Clear Error.

As an initial matter, Maplewood acknowledges that certain support set forth herein, including the attached exhibits and quotations from the 30(b)(6) depositions, was not set forth in Maplewood's underlying Response[1]. However, Consigli did not raise any issue regarding the relevance or duplicity of the discovery being sought by means of the Subpoena, thereby challenging the substance of the discovery being sought. Consigli instead focused on the timing of Maplewood's issuance of the Subpoena. Maplewood respectfully believes that this was overlooked in connection with the Court's Order. Upon information and belief, Consigli would *not* challenge Maplewood's assertion that it expected Matthew Burger and Douglas Renna to be able to speak to the actual costs of the CCIP, Subguard, and Bonds, given the topics of examination set forth in the 30(b)(6) Notice. As such, Maplewood did not believe that it was necessary to go through all bases supporting its justified belief that Consigli's 30(b)(6) witnesses would be able to testify regarding the costs at issue, but ultimately failed to do so.

Maplewood's motion for reconsideration should be granted in the interest of justice, as Maplewood would be severely prejudiced if barred from obtaining the discovery sought by the Subpoena. When Maplewood sought leave to amend its Counterclaim (ECF No. 122), it

---

[1] Maplewood also notes that, although not argued in its Response, Consigli lacks standing to move to quash the Subpoena. A party generally lacks standing to challenge a subpoena served on a non-party unless the objecting party has a personal right or privilege in the information sought. *See Estate of Ungar v. Palestinian Authority*, 332 Fed. App'x 643, 645 (2d Cir. 2009); *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975); *Zinter Handling, Inc. v. Gen. Elec. Co.*, No. 04-CV-500 (GLS/DRH), 2006 WL 3359317, at *3 (N.D.N.Y. Nov. 16, 2006) (finding lack of standing on motion to quash a subpoena where the subpoena "directed the production of 'documents relating or referring to drawings, contracts, purchase orders or invoices supplied to AGT Services by' movants or related individuals or entities" and "[u]nder no interpretation would the language of this demand encompass protected banking or financial records").

reasonably believed that it would obtain the information sought by the Subpoena, and no additional discovery would be necessary, as Consigli's corporate designees should have possessed the relevant knowledge, one of whom had yet to be deposed. Maplewood's 30(b)(6) Notice clearly indicates that the topics of examination would include information related to the actual costs of the CCIP, Subguard and Bonds. Notwithstanding the foregoing, Consigli's corporate designees were unable to testify knowledgably about these topics. As Douglas Renna's deposition took place on March 3, 2022, Maplewood was justified in issuing the Subpoena to Alliant the following day, on March 4, 2022.

Consigli has not alleged that it would be prejudiced by issuance of the Subpoena. In contrast, Maplewood will be deprived of the opportunity to fully substantiate its claims against Consigli without the information sought through the Subpoena. The Second Circuit has long acknowledged that strong public policy favors resolving disputes on the merits. *See Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Accordingly, Maplewood respectfully requests that the Court reconsider its Order to correct an error and in the interest of justice, allowing Maplewood to obtain the limited categories of documents sought by the Subpoena, in order to substantiate its claims against Consigli with information that should have been provided by Consigli's corporate designees.

## **CONCLUSION**

For all of the foregoing reasons, the Court should: (i) grant Maplewood's motion for reconsideration in its entirety; (ii) deny Consigli's request that the Subpoena issued to Alliant be quashed; and (iii) award such other and further relief as the Court deems just and proper.

Dated: March 21, 2022

Respectfully submitted,

**DEFENDANT MAPLEWOOD SENIOR LIVING, LLC**

*/s/ Peter E. Strniste, Jr.*
Peter E. Strniste, Jr.
Gordon & Rees Scully Mansukhani
One Battery Park Plaza, 28th Fl.
New York, NY 10004
Telephone: 212-453-0730
pstrniste@grsm.com

Motion DENIED. Defendant's motion does not set forth any "matters or controlling decisions which counsel believes the Court has overlooked" as required by Local Rule 6.3. Maplewood presents for the first time the contents of its 30(b)(6) notice. However, the excerpts from Plaintiff's 30(b)(6) depositions demonstrate that Consigli has not complied with its obligations under Federal Rule of Civil Procedure 30(b)(6).

The parties are directed to meet and confer by **March 25, 2022**, to discuss how Consigli will remedy the deficiencies in its 30(b)(6) testimony. If the parties are unable to resolve this dispute, the parties shall file a joint letter by **March 28, 2022**, stating their respective positions.

Dated: March 22, 2022
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE