UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
CONSIGLI & ASSOCIATES, LLC,                                  :
                                         Plaintiff,          :
                                                             :            20 Civ. 7712 (LGS)
            -against-                                        :
                                                             :         **OPINION AND ORDER**
MAPLEWOOD SENIOR LIVING, LLC,                                :
                                         Defendants.         :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        This action is a contract dispute between the parties to a construction contract -- Plaintiff

Consigli & Associates, LLC ("Consigli") as the construction manager and Defendant

Maplewood Senior Living, LLC ("MSL") as the owner's agent.  Plaintiff sues for breach of

contract and wrongful termination.  MSL counterclaims for breach of contract, violation of

sections 39 and 39-A of the New York Lien Law, breach of the implied covenant of good faith

and fair dealing and fraud.  The parties cross-move for partial summary judgment.  For the

reasons below, both motions are granted in part and denied in part.

I.      **BACKGROUND**

        The following undisputed facts are drawn from the parties' Rule 56.1 statements and

other submissions on this motion.  On the respective cross-motions, all reasonable inferences are

drawn in favor of the non-moving party.  *See N.Y. State Teamsters Conf. Pension & Ret. Fund v.*

*C & S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022).

        The parties' contract, dated February 22, 2017 (the "Contract"), consists of a modified

American Institute of Architects ("AIA") A133-2009 Standard Form ("A-133") and AIA A201-

2007 General Conditions ("General Conditions").  On November 28, 2017, MSL and Consigli

executed a Guaranteed Maximum Price ("GMP") Amendment.  The GMP is based upon a list of

drawings and specifications that are incorporated in the Contract.  The GMP Amendment set an original Substantial Completion deadline of October 18, 2019, which was then extended at least to December 4, 2019.

Handel Architects, LLP served as the Project Architect (the "Architect").  During the course of the Project, the Architect issued many additional sketches and several addenda that changed the design of the project.  Many of those changes were issued as part of Addendum 6, dated April 19, 2018.  The project was not completed by the Substantial Completion date in the Contract and, beginning in March 2020, was impacted further by the COVID-19 pandemic.  As set forth in greater detail below, the Contract contained detailed provisions describing the scope of the "Work" for which Consigli would be paid and the procedures for changing that Scope and the timeline.  Several disputes arose between MSL and Consigli over whether Consigli is entitled to compensation for additional work.  On March 23, 2021, MSL purported to terminate the Contract for cause and took steps to complete the project without Consigli.

## II.    STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).  In evaluating a motion for summary judgment, a court must "construe the record

evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cty.*, 17 F.4th 342, 354 (2d Cir. 2021).  When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing to particular parts of materials in the record.  *See* Fed. R. Civ. P. 56(c)(1)(A).  "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021).

## III.   DISCUSSION

### A.   MSL's Motion for Summary Judgment on Counts Two and Four of the SAC

Counts Two and Four of the Second Amended and Supplemental Complaint ("SAC") allege breach of contract based on MSL's failure to pay Consigli.  Count Two alleges that MSL failed to pay for (1) five change order requests ("CRs") relating to extra and additional work, (2) seven CRs relating to delays and schedule impacts and (3) two other categories of costs incurred by subcontractors.  Count Four alleges that MSL failed to pay for six CRs relating to work that MSL directed Consigli to perform on an adjacent building.  MSL seeks summary judgment, arguing that it has no obligation to make these payments because Consigli failed to comply with contractual notice requirements and waived its claims in other agreements.  MSL's motion is granted in part and denied in part.

#### 1.   Relevant Contract Provisions

Article 7 of the General Conditions, titled "Changes in the Work," specifies the ways in which the "Work" can change -- including by "Change Order" ("CO") or "Construction Change Directive" ("CCD").  A CO requires agreement by both the Contractor (Consigli) and Owner's Agent (MSL).  A CCD can be issued without Consigli's prior agreement.  Unless Consigli notifies MSL within ten days after receipt of a CCD of a disagreement with its terms -- such as

3

provisions for additional time or compensation -- Consigli is deemed to have agreed with those terms.  Article 7 contemplates that "Supplemental Drawings and Specifications" ("Supplemental Drawings") may be issued during the project.  Consigli is obliged to review such Supplemental Drawings and, if it believes any item constitutes a "Scope Change," (1) within ten days of receipt, notify MSL and the Architect, and (2) within twenty-one days of receipt, provide a cost breakdown.

When MSL receives notice, it has three options:  (1) modify the Supplemental Drawings; (2) if it agrees with the Scope Change, enter into a CO or (3) if it disagrees and does not wish to modify the design, proceed to a dispute process laid out in Article 15 of the General Conditions. Consigli can seek additional payment for Supplemental Drawings only if they give rise to a Scope Change.  If Consigli fails to comply with the notice requirement, it waives its right to claim a Scope Change.  If the parties execute a CO, "[u]nless expressly reserved . . . [it] shall constitute a final settlement of all matters relating to the change in the Work which is the subject of the" CO.  In addition to those provisions governing Supplemental Drawings, section 7.6.3 provides that Consigli cannot claim extra cost or time for *any* changes to the work unless Consigli gives prompt notice and receives a written order to proceed.

Article 8 of the General Conditions is titled "Time," and section 8.3 is titled "Delays and Extension of Time."  Section 8.3.1 lists circumstances that could result in extensions of the time to complete the project, provided Consigli is not at fault, including acts of the MSL or the Architect, "changes ordered in the Work," "Acts of God," and "other causes beyond [Consigli's] control."  If one of those events occurs, the time to complete the project "shall be extended" by CCD for a reasonable time as determined by MSL or the Architect.  Section 8.3.9 further limits Consigli's claims for delays against MSL to actual costs and to circumstances in which Consigli

bears no blame.  As a condition to asserting such a claim, section 8.3.3 requires Consigli to notify MSL and the Architect of any delay within five days "following the event or occurrence causing such delay" and of the estimated extent and cost of the delay within 21 days following such event or occurrence.  Section 8.3.2 sets forth the details that must be included in Consigli's "written Claim" for more time or money from delay.

Article 15 of the General Conditions is titled "Claims and Disputes."  The general rule of section 15.1.2, "Notice of Claims," is that claims must be initiated by a written notice stating the basis of the claim within thirty days after the later of (i) the date of the event giving rise to the claim or (ii) the date of recognition of the condition giving rise to the claim.  That section further provides, however, that "in the case of a Claim based upon delay to [Consigli], as a condition precedent to any Claim, [Consigli] shall first provide initial notice of a delay within five (5) days of the event . . . and then provide a Claim within twenty-one days (21) thereafter."  That section concludes by twice repeating that failure to initiate a claim within the specified time limit will result in waiver.

Section 15.1.4, "Claims for Additional Cost," requires that whenever Consigli seeks additional compensation, it must provide "written notice as provided herein" and must "not proceed with the work relating to such Claim until [Consigli] has received a further written order to proceed."  But "[p]rior notice is not required for Claims relating to an emergency endangering life or property."  In an emergency, section 10.4 authorizes Consigli to act at its own discretion "to prevent threatened damage, injury or loss," with additional compensation or time to be determined in accordance with Articles 15 and 7.

Section 15.1.5 is titled "Claims for Additional Time," and section 15.1.5.1 states:

[Consigli] shall advise [MSL] and Architect in writing of any known delay within five (5) days of its knowledge of the same . . . and shall include an identification

of the delay, its anticipated duration and its anticipated effect on the prosecution and completion of the Work.  Subject to Section 8.3.9, if [Consigli] wishes to make a Claim for an increase in the Contract Time and, if applicable, Contract Sum, written notice as provided in Section 15.1.2 shall be given.  [Consigli's] Claim shall include an estimate of cost and of probable effect of delay on progress of the Work.  In the case of a continuing delay, only one Claim is necessary.

Sections 15.2 through 15.4 lay out a detailed claims process, which must begin with "an initial decision" by the "Initial Decision Maker" ("IDM").  Section 1.1.8 of the General Conditions and Section 9.3 of the A133 provide that "[t]he Architect shall be the" IDM.  Section 9.1 of the A133 requires all Claims to be "resolved in accordance with" Article 9 of the A133 and Article 15 of the General Conditions, but provides that for Claims related to "Preconstruction Phase services, no decision by the [IDM] shall be required as a condition precedent to mediation or binding dispute resolution, and Section 9.3 . . . shall not apply."  Section 15.3 of the General Conditions requires mediation of all claims "as a condition precedent to binding dispute resolution."  Section 15.4 further provides that claims not resolved by mediation or negotiation will be subject to litigation in this District.

### 2.  Count Two: Claims for Extra and Additional Work

The following CRs for which Consigli seeks damages in Count Two pertain to extra and additional work:  CR-450, CR-471, CR-534, CR-553r1[1] and CR-633.  MSL argues that each is barred because Consigli failed to provide the notice required by several sections of the General Conditions, including sections 7.1.4.1, 7.6.3, 15.1.2 and 15.1.4.  MSL also argues that CR-553r1 is barred by section 7.2.2 because Consigli executed CO-44 on related work, and by section 7.3.7 because Consigli failed to object timely to CCD-4 accelerating the project.  MSL's motion is granted as to CR-534 and CR-633 because Consigli failed to comply with the notice of claim

---

[1] Consigli clarified in its response to MSL's Local Rule 56.1 statement and elsewhere that CR-553 Revision 1 ("CR-553r1") is at issue, not the original CR-553.

requirements of Article 15 of the General Conditions.  MSL's motion is denied as to CR-450,

CR-471 and CR-553r1 because there is a triable issue of fact whether Consigli complied with

sections 7.6.3 and 15.1.4, and because there is no evidence to support MSL's other defenses.

### a. Notice Requirements Applicable Supplemental Drawings and Scope Changes -- General Conditions Section 7.1.4.1

CR-450 and CR-471 pertain to certain "millwork" that, in the original design, did not

meet relevant fire safety standards.  CR-450, dated November 15, 2019, claims $17,120.12 based

on a quote for fire-safety testing on certain millwork.  CR-471, dated December 15, 2019, claims

$173,855.04 for procurement of materials and remediation of the problematic millwork.  CR-

534, dated June 24, 2020, claims $6,916.96 for the labor costs associated with a "3rd pretest

walkthrough . . . in preparation for the FDNY fire alarm walkthrough."  CR-553r1, dated July 2,

2020, claims $234.573.12 for "overtime costs that Delco worked from (7/22/19 thru 10/1/19) in

order to mitigate impacts to the project schedule."  And CR-633, dated May 6, 2020, claims

$8,260.28 for "Ethos Plumbing to clear the outstanding notification on the DOB Now website for

the boiler removal . . . for" a separate property.  With the exception of CR-471, Consigli checked

a box on each of the request forms stating, "We have proceeded with this change to achieve

schedule," as opposed to the box stating "As directed, we will not proceed with this change until

formal direction from OWNER is received."

There is no evidence in the record from which a finder of fact could conclude that the

notice requirement applicable to Supplemental Drawings issued by the Architect in section

7.1.4.1 applies to these CRs.  CR-450 describes several changes in the millwork that were not

driven by the Architect, including a reduction in the veneer of the millwork "at the

recommendation of Donaldson," and further tests performed by Donaldson to determine whether

the millwork would receive an adequate fire safety rating.  CR-471, from Consigli, begins "We

7

offer the following specifications and pricing to make the changes as described below" and describes Consigli's work with Donaldson to fix the millwork issue. A factfinder could infer from the text of the CRs that Consigli and its subcontractors -- not MSL or the Architect -- developed the designs and specifications for these changes.

The other CRs in this group are similar. CR-534 on its face appears unrelated to design changes, and no evidence contradicts that impression. CR-553r1 references drawings, but also states that a separate amount was added "to Delco's base contract" for those changes. CR-553r1 seeks only costs related to overtime caused by MSL's denial of a schedule change, not for the underlying "Scope Change," if there was one. CR-633 on its face pertains to an administrative function for a different property, which a reasonable factfinder could conclude had nothing to do with Supplemental Drawings.

### b. Advance Notice and Approval Requirements -- General Conditions Section 7.6.3 and Section 15.1.4

MSL argues that, even if section 7.1.4.1 does not apply, Consigli's claims are barred by sections 7.6.3 and 15.1.4, which require Consigli to give advance notice of a claim for additional work and to refrain from starting until it receives a written order to do so. This argument fails because a reasonable factfinder could conclude that these notice and order requirements were met. The declarations of Douglas Renna and Matthew Burger of Consigli attest to an agreement between Mr. Renna and Thomas Gaston of MSL to hold off on processing certain COs. On December 3, 2018, James Adams of MSL wrote an email to Consigli discussing "a list of cost impacts that may result from implementing the DRAFT corrective plan developed by [Consigli] last week." The email continued:

> Assuming Owner provides verbal acceptance of all the corrective measures,
> [Consigli] will issue a potential change order ('PCO') for each cost impact and
> proceed with implementing the corrective measures. As with all PCOs (e.g., all
> of the approved Addendum 6 changes) Owner will review as quickly as possible,

but Owner's review of the PCO should not delay [Consigli's] implementation of
the corrective measures.

* * *

I believe this path forward reflects the spirit of the agreement made between Doug
[Renna of Consigli] and Tom [Gaston of MSL] last week -- i.e., to get all cost
impacts and schedule delay claims papered so as to protect each party's rights, but
not to let final resolution of those claims delay implementation of corrective
measures.  Please confirm.

A reasonable factfinder could conclude that this email constitutes advance approval to

proceed with certain changes provided Consigli receives "verbal acceptance" after giving notice.

In the case of CR-450 and CR-471, Consigli witness Matthew Burger affirms that Consigli

received verbal acceptance at a November 19, 2019, meeting, which he attended.  The minutes

show that the topic was discussed at that meeting.  A reasonable factfinder could find that MSL

gave verbal acceptance for the other changes as well, based on Consigli witness testimony that

Consigli acted pursuant to the parties' side-agreement, corroborated by the email above, and the

language in the CRs stating that Consigli proceeded with changes to meet the schedule.

MSL points to several provisions of the Contract that purportedly bar oral modifications

-- including sections 1.1, 1.2 and 12.1 of the A-133 -- but no modification is required for these

claims to survive summary judgment.  A reasonable factfinder could conclude that the email

quoted above constitutes a "written order to proceed" as required by sections 7.6.3 and 15.1.4,

and covers the CRs at issue as "corrective measures" meant to finish the project on time.

Drawing inferences in Consigli's favor, a reasonable factfinder could conclude that Consigli had

advance authorization to do this work and gave timely notice of its claims.

### c.  Notice of Claim Requirement -- General Conditions Section 15.1.2

MSL argues that all of the claims discussed above are barred by failure to comply with

the provisions of section 15.1.2 of the General Conditions, which require Consigli to give notice

of any "Claim" for extra or additional work "within 30 days after occurrence of the event giving rise to such Claim or within thirty (30) days after the first recognition of the condition giving rise to the Claim, whichever is later."  Section 15.1.1 defines a "Claim" as "a demand or assertion by the Contractor seeking payment of money, or other relief with respect to the terms of the Contract."  But a reasonable factfinder could find that each of the above-mentioned CRs constituted a "Claim," since each sets forth the extra work at issue in detail and seeks a specific sum of money as compensation.  Absent any evidence proffered by MSL about when each "Claim" accrued, the record evidence demonstrates that CR-450, CR-471 and CR-553r1 were timely, but no evidence supports such a finding as to CR-633 or CR-534.

CR-450, dated November 15, 2019, attached two subcontractor quotations as backup dated August 15 and October 15, 2019, respectively.  CR-471 mentions that the testing work claimed by CR-450 was finished on October 28, 2019, well within thirty days of CR-450.  CR-471, which is dated December 15, 2019, also states that the direction to proceed with the work claimed by CR-471 was received less than thirty days earlier, on November 19, 2019.  Thus, the only reasonable conclusion that a factfinder could reach is that both CR-450 and CR-471 claimed costs for work performed less than thirty days before.  MSL has not pointed to any Contract provision or record evidence suggesting that different dates are the relevant dates on which the Contract's thirty-day notice-of-claim period was triggered.

While CR-553r1, dated July 2, 2020, seeks compensation for overtime worked from "7/22/19 thru 10/1/19" and states that the work occurred "in order to mitigate impacts to the project schedule," "[d]ue to schedule impacts not caused or created by Consigli and the numerous amount of design changes, owner added scope, sketches, addendums and revisions to sketches and Addendums that have been issued."  While CR-553r1 is categorized in the

Complaint as seeking costs for extra or additional work, it is better understood as seeking costs related to schedule impacts.  The timeliness of the notice of claim is therefore analyzed in the following section and, as with the other CRs seeking delay-related costs due to design changes, a reasonable factfinder could conclude that the Claim was timely due to the continuing nature of the delay, pursuant to section 15.1.5.1 of the General Conditions.

There is no triable issue of fact, however, about whether CR-534 or CR-633 was timely. CR-534 is dated June 24, 2020, and on its face it seeks compensation for work performed on January 6, 2020.  CR-633 is dated May 6, 2020, and on its face it seeks reimbursement for an invoice dated March 11, 2020.  Consigli argues that CR-633 pertains to an administrative function related to a building unrelated to the Project, seeming to argue that CR-633 is not subject to the Contract's notice provisions.  But section 15.1.1 defines a "Claim" broadly to encompass any "other disputes and matters in question by the Contractor arising out of or relating to the Contract."  If Consigli were correct that CR-633 is not covered by the Contract and its notice provisions, then it cannot be the subject of a breach of contract claim, and summary judgment on these CRs would still be appropriate.

### d.  Waiver by Change Orders and Construction Change Directives -- General Conditions Section 7.2.2 and Section 7.3.7

MSL also argues that CR-553r1 is barred by section 7.2.2 of the General Conditions because Consigli executed CO-44, and by section 7.3.7 because Consigli failed to object to CCD-4.  The Contract provides that a CO settles "all matters relating to the change in the Work which is the subject of the [CO]," and that Consigli's failure to object to a CCD within ten days of receipt is deemed to constitute agreement to any adjustment (or lack of adjustment) in the contract price.  MSL is denied summary judgment on this ground because MSL's arguments that CO-44 and CCD-4 covered the costs claimed by CR-553r1 are contradicted by the unambiguous

language of those documents.  Even if the documents were ambiguous, MSL has put no evidence in the record that either encompasses the costs claimed by CR-553r1.

MSL's argument as to CO-44 fails because CR-553r1 unambiguously did not "relat[e] to the change in the Work which is the subject of the [CO]."  The underlying CR-106r1, which was the subject of CO-44, references different Supplemental Drawings than CR-553r1.

Similarly, CCD-4 was issued on October 25, 2019, weeks after the latest overtime claimed by CR-553r1.  CCD-4 directed Consigli to accelerate the project and stated that "Consigli is required to proceed immediately with the work set forth in the attached CCD."  CCD-4 on its face is unambiguously prospective in nature.  It directs Consigli to "proceed" with work and does so in October 2019.  CCD-4 cannot reasonably be read to conclude that Consigli incurred overtime in July, August and September because of an October directive to accelerate the project.  Therefore, even if Consigli is deemed to have agreed to complete the work directed in CCD-4 for no extra pay, that "agreement" did not cover the work and the associated costs claimed by CR-553r1.

### 3.  Count Two: Claims for Alleged Schedule Impacts and Delays

The following CRs for which Consigli seeks damages in Count Two relate to schedule impacts and delays:  CR-617, CR-45, CR-144, CR-351, CR-544, CR-689, CR-714, CR-687 and, as discussed above, CR-553r1.  Consigli also seeks damages for an unlabeled claim for subcontractor costs related to COVID-19, which was not memorialized in a CR.  MSL argues that Consigli's claim on each is barred by various contractual notice provisions.  The Contract generally requires notice of the delay within five days of the delay-causing event, and a more detailed claim within twenty-one days.  However, most of the disputed CRs pertain to continuing delays, and the parties dispute when the delay-causing events ended and when Consigli's clock

to submit notice of their claims started.  MSL's motion is largely denied as to these CRs, but it is granted with respect to claims for certain one-off events.

### a.   COVID-19-Related Delays

MSL's motion for summary judgment is denied with respect to all portions of Count Two that pertain to COVID-19-related delays: CR-617, CR-687 and an unlabeled claim for subcontractor COVID-19 claims.  CR-617, dated April 11, 2020, seeks delay costs related to the outbreak of the COVID-19 pandemic in the United States.  MSL concedes that Consigli first sent notice of the delay in a letter dated March 16, 2020 (transmitted in an email dated March 17, 2020), sent further notice in a letter dated March 26, 2020, and sent a CR detailing costs for the first 42 days of delay on April 11, 2020.  MSL argues that one or more of these submissions was untimely relative to a March 11, 2020, declaration by the World Health Organization ("WHO").  Similarly, MSL argues that CR-687 is barred because it seeks subcontractor costs related to COVID-19 that were incurred months before the CR was submitted.  And MSL argues that the unlabeled claim for subcontractors' COVID-19 costs is untimely and barred by failure to comply with conditions precedent to litigation, such as submission of a formal Claim and mediation.

For its untimely-notice arguments, MSL relies on various Contract provisions.  Section 8.3.2 of the General Conditions requires that delay claims be submitted "in accordance with the applicable provisions of Article 15 and this Section 8.3.2 through Section 8.3.9."  Section 8.3.3 and section 15.1.2, in turn, both require notice of a delay within five days following the delay-causing event, followed by an "estimated extent of the delay and the actual Cost" (in the language of section 8.3.3) or simply a "Claim" (in the language of section 15.1.2) within twenty-one days.  Section 15.1.5.1 also provides that "[i]n the case of a continuing delay, only one Claim is necessary."

A reasonable finder of fact nevertheless could find that Consigli's notice of these Claims was timely, since it could conclude that COVID-19 constituted a "continuing delay" from March through at least September 2020, when this lawsuit was filed. A factfinder could construe the delay-causing event as the pandemic itself, and/or the complex of human and policy responses to the pandemic, and conclude that five days after that event did not occur until long after March 11, 2020. Defendant's interpretation -- requiring Consigli to make serial, interim claims even before it could estimate the associated costs -- is unsupported by the Contract.

Separate from its arguments about notice requirements, MSL argues that utilization of the Contract's dispute resolution mechanism -- including a formal Claim and mediation -- was a condition precedent to pursuing the claims in litigation. This argument is unpersuasive because it is undisputed that the Architect was not acting as the initial decisionmaker ("IDM"), meaning there was no IDM appointed to initiate the dispute process. Section 15.2.1 of the General Conditions provides that "an initial decision shall be required as a condition precedent to mediation," and mediation, in turn, is a "condition precedent to binding dispute resolution." But because there was no IDM, it was impossible for this process even to start. Contrary to MSL's argument, Consigli was not required to submit its Claims to a process that MSL never set up. *See MHR Cap. Partners LP v. Presstek, Inc.*, 912 N.E.2d 43, 48 (N.Y. 2009) ("[A] 'party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition.'"); *accord VXI Lux Holdco S.A.R.L. v. SIC Holdings, LLC*, 98 N.Y.S.3d 1, 6 (1st Dep't 2019).

### b. Design Change-Related Delays

MSL's motion for summary judgment is denied with respect to all portions of Count Two that pertain to delays allegedly caused by MSL's design changes. CR-144, CR-544, CR-553r1,

14

CR-689 and CR-714[2] were submitted on November 1, 2018, February 6, 2020, July 2, 2020, September 8, 2020, and December 16, 2020, respectively.  MSL makes the same notice-based arguments as it does with respect to the COVID-19-delay claims, which are unpersuasive for similar reasons.  Each of those claims references ongoing design changes issued by MSL and the Architect, beginning with Addendum 6.  MSL disputes Consigli's precise accounting of the number of changes, but a reasonable factfinder could conclude from the record that Addendum 6 was a comprehensive redesign and that further revisions continued through Addenda 7, 8 and 9 and elsewhere.  A finder of fact could find that the claims arose from a "continuing delay," so that Consigli was permitted to submit its claims when the continuing redesigns were substantially complete in 2020.

CR-351, dated July 12, 2019, claims compensation both for delays caused by Addendum 6 design changes and for delays caused by other non-design-related factors.  With respect to the former category, to the extent CR-351 seeks compensation for Addendum 6 design changes, a reasonable finder of fact could conclude that Consigli provided timely notice of a continuing delay as discussed above.  With respect to the latter category, to the extent CR-351 seeks compensation for delays related to weather delays and other apparently one-off delay-causing events, MSL's motion is granted.  The record shows that Consigli timely provided initial notice of each of the delays but there is no evidence that Consigli provided an estimate of the time and expense incurred or any of the required backup in a timely fashion.  Consigli's claims for non-

---

[2] CR-714 was a hybrid request that also sought compensation for COVID-19-related delays, which was timely for the reasons discussed above.  MSL argues that CR-714 is also barred for failure to contain a "network analysis" supporting the requested change.  Because COVID-19 presumably affected the entire project, rather than discrete pieces that would implicate a "network analysis," there is a question of fact whether CR-714 was adequate under the Contract.

design-related delays under the heading of CR-351 are therefore barred by the Contract's notice clauses.

MSL also argues that, by executing several COs related to Addendum 6, Consigli entered a "final settlement" of the above CRs that also related to Addendum 6.  MSL cites several COs that settle "all matters relating to the change in the Work which is the subject of the [CO]."  But MSL does not explain how any of the COs pertain to the *same* changes for which Consigli now seeks compensation, and the fact that they all pertain to Addendum 6 is insufficient.  Otherwise, MSL would have had no need to enter into almost a dozen different Addendum 6 COs; the first one would have settled all claims.  Because MSL bears the burden of proof on this affirmative defense akin to release, the absence of record evidence establishing that the release applies to Consigli's claim is fatal to summary judgment.  *See Kocourek v. Booz Allen Hamilton Inc.*, 981 N.Y.S.2d 392, 394 (1st Dep't 2014) (treating release as an affirmative defense); *Zhang v. ABC Corp.*, 149 N.Y.S.3d 156, 159 (2d Dep't 2021) ("[I]t is a defendant's burden, when it is the party moving for summary judgment, to demonstrate affirmatively the merits of a defense, which cannot be sustained by pointing out gaps in the plaintiff's proof." (internal quotation marks omitted)).

### c.  CR-45

MSL's motion is denied with respect to the portion of Count Two based on CR-45.  CR-45 relates to costs Consigli incurred during a "Stop Work Order" ("SWO") issued by the New York City Department of Buildings ("NYC DOB") on October 10, 2017.  Consigli submitted CR-45 on April 9, 2019.  MSL makes several arguments about why the submission was untimely, citing the original provisions of the Contract.  But MSL and Consigli modified those terms in a signed writing as applied to CR-45 as follows in CO-1:

> Also discussed is that [Consigli] incurred cost during the SWO but will not
> submit those costs to [MSL] unless a claim is submitted against the [contractor
> controlled insurance program ("CCIP")] policy for this project.  Costs related to
> this stop work order are not included in the Change order as they are included in
> CR045 'SWO Related to 303 E93rd Plaster Ceilings - Part II - GC Costs Incurred'
> and will be submitted separately only in the event [MSL] submits a claim against
> the project's CCIP policy.  [Consigli] makes no representation as to whether any
> claim submitted by [MSL] to the CCIP shall be approved for reimbursement.

MSL thus agreed to modify the Contract so that Consigli could submit CR-45 at some point in the future if MSL made a claim against the CCIP policy.  MSL argues that Consigli had no rights remaining to reserve at the time that CO was signed, because the time for providing notice already had lapsed.  Even assuming that is true, MSL agreed in writing to a modification of the Contract that gave Consigli new rights.  MSL also notes that Consigli did not submit CR-45 until ten months after MSL submitted its CCIP claim.  But MSL does not point to any portion of the Contract, as modified, that imposes a time limit after the submission of that claim.  Based on the evidence, a reasonable finder of fact could conclude that Consigli timely submitted CR-45.

### 4.  Count Four: Claims Related to Damage Caused to Adjacent Structures

In Count Four of the SAC, Consigli seeks damages related to the following CRs that MSL rejected, each of which concerns damage caused to adjacent buildings during construction: CR-12, CR-42, CR-47, CR-52, CR-136 and CR-170.  The October 10, 2017, SWO stated, "during drilling operations . . . contractor damaged the adjoining structured [*sic*] . . . it was noted cracks on the ceiling on apt. #1B.  Tenants of apt. #1B, #2A and #2C were vacated due to the collapsed [*sic*] of the ceilings.  Tenants have to be relocated."  MSL moves for summary judgment based on various notice provisions in the Contract.  That motion is granted with respect to CR-47, CR-52 and CR-136 and denied with respect to CR-12, CR-42 and CR-170.

CR-12 seeks compensation for "investigative probe work requested by Maplewood to assist with engineering evaluation of Building 303 East 93rd Street that has been required by

17

NYC DOB related to DOB violation."  This work also consisted of "temporary shoring of plaster ceilings" and "horizontal netting" to enable further work on the building. Consigli submitted CR-12 on the first day the work was performed, October 20, 2017, and submitted an updated version on the last day the work was performed, December 4, 2017.  MSL does not dispute that Consigli gave timely notice but argues that Consigli's claims are barred because it proceeded with the work without advance written authorization under sections 7.6.3 and 15.1.4 of the General Conditions.  Summary judgment is denied because a reasonable factfinder could find that this probe work, apparently driven by demands from both MSL and the NYC DOB, was performed in an "emergency affecting life or property" and thus that advance authorization was excused by the Contract.  MSL notes that the work did not begin until ten days after the SWO, but the record indicates that the exigent circumstances caused by the damage to adjacent buildings were not static as of October 10, 2017, but continued to evolve.

CR-42, dated January 19, 2018, describes how, "[o]n 11/25/17 a crack was noticed on the northeast corner of the façade of the 304 E94th Street building.  [Consigli], at the direction of ownership, instructed Spring Scaffolding to install an emergency sidewalk bridge under the crack in order to safeguard the public from any debris that could potentially fall from the crack." CR-42 seeks compensation for extra work based on drawings received on January 5, 2018, from Thornton Tomasetti ("TT"), a consultant to MSL.  MSL argues that this claim is barred because Consigli failed to comply with section 7.1.4.1's requirement that Consigli provide notice of purported "Scope Changes" and the time and costs associated therewith promptly upon receiving Supplemental Drawings from the Architect or an "Engineer."  Section 7.1.4.1 does not apply to these drawings because it is undisputed that TT was not the Architect and was, instead a "Project Consultant," a role that the Contract expressly distinguishes from an "Engineer."

Contrary to MSL's argument, Consigli is not deemed to have agreed to CCD-1 and waived its claim in CR-42. Under section 7.3.7 of the General Conditions, Consigli must "notify [MSL] of any disagreement with any proposed adjustment to [the price or time] or method for determining them set forth in a [CCD] within ten days after the date of receipt." Consigli's submission of CR-42, seeking compensation for the work before CCD-1 was issued, constituted notice to MSL that Consigli disagreed with being paid nothing for that work, and that notice was sent prior to "ten days after" Consigli received the CCD. In context, it is not reasonable to read section 7.3.7 to require that the notice come *after* receipt of the CCD. Under that interpretation, MSL could repeatedly issue CCDs on terms that it knows are unacceptable to Consigli in the hope that Consigli will miss a deadline and waive rights it already asserted.

MSL's motion is denied with respect to CR-170, dated December 13, 2018, which seeks compensation for certain cleaning work that MSL purportedly "verbally requested." This change post-dates the December 3, 2018, email discussed above which provides a basis for a reasonable factfinder to conclude that MSL gave written pre-authorization for extra and additional work to meet schedule, subject to verbal authorization.

MSL's motion is granted with respect to the portions of Consigli's claim based on CR-47 and CR-52, which both relate to fines that Consigli paid to the NYC DOB. CR-47 is dated January 8, 2018, and CR-52 is dated April 29, 2019. There is no record evidence to establish precisely when the fine addressed by CR-47 was incurred or paid, so no reasonable factfinder could conclude that Consigli gave timely notice of that Claim within thirty days. CR-52 on its face states that the fine at issue was paid on February 23, 2018, more than a year before the CR was submitted. Consigli argues that the payment of fines does not constitute "Work" under the Contract, so requests for compensation for performing those functions are not subject to certain

19

contractual notice requirements.  This argument is unpersuasive, since the Contract defines "Work" to include effectively any performance of any of Consigli's duties required by the Contract, and it defines "Claim" to include essentially any dispute arising under the Contract.

MSL's motion is granted with respect to the portion of Consigli's claim that is based on CR-136.  On July 16, 2018, MSL issued CCD-2, directing Consigli to repair and waterproof cracks in adjacent structures and providing for an increase in the project cost of $22,369.55, "all inclusive."  Pursuant to section 7.3.7 of the Contract, Consigli's failure to object to a cost adjustment in a CCD within ten days is deemed agreement to the adjustment, and pursuant to section 7.2.2, execution of a CO constitutes a final settlement of all issues relating to the work covered by the CO.  After receiving CCD-2, Consigli submitted two different CRs for the work required by that directive, seeking $21,994.64 in CR-113r1 and splitting out "[h]alf of the costs for the crack repair, patching, mobilization and scaffolding," or $7,134.67, into CR-136.  The parties then executed CO-31, agreeing to $21,994.64 for CR-113r1.  Thus, while the record is not clear on whether Consigli ever objected to CCD-2, the matter was finally settled by CO-31, and any claim based on CR-136 is barred.

### 5.  Potential Waiver of All Claims

In addition to the CR-specific arguments addressed above, MSL argues that Consigli waived all of the contested claims in connection with its final payment application on March 17, 2021.  That application contained a sworn statement and affidavit stating "the total amount of the contract including extras" and disclaimed any other amounts due or to become due.  "Extras," in that affidavit, are defined to "include" but not be "limited to change orders, both oral and written, to the contract."  The application also refers to changes to the Contract "by Change Order." MSL's argument is unavailing because Consigli seeks payment in this case for CRs that MSL never agreed to, i.e., that never became COs, and were not embodied in other agreed contract

20

changes like CCDs.  Therefore, Consigli's application for payment neither sought nor waived payment for disputed CRs.

      **B.**      **The Cross-Motions for Summary Judgment on Wrongful Termination**

Defendant moves for summary judgment on Count Seven of the SAC, for wrongful termination, and Plaintiff cross-moves for partial summary judgment on liability on the same count.  For the reasons below, both parties' motions on Count Seven are denied.

Section 14.2 of the General Conditions is titled "Termination by the Owner's Agent." Section 14.2.1 enumerates the four categories of grounds for termination for cause.  If the Contract is terminated for cause, Consigli is entitled to further payment only after the project is complete and only up to the amount actually earned if any of the contract price is left over after MSL finishes construction.  If the Contract is terminated for any other reason, it is a termination "for convenience," and Consigli's recovery is subject to a different calculation based on direct costs incurred, limited by the total outstanding price of the Contract "as properly adjusted."

By letter dated March 23, 2021, MSL purported to terminate the Contract for cause pursuant to section 14.2.1.4, which permits termination if, *inter alia*, Consigli "violates a material provision of this Contract."  Prior to MSL sending its termination letter, the NYC DOB had issued two Temporary Partial Certificates of Occupancy ("TPCOs") on April 1 and August 27, 2020.  Following the April 1, 2020, TPCO, certain of MSL's employees began residing in parts of the building constructed as part of the project.  On February 9, 2021, MSL executed a Certificate of Substantial Completion, certifying that the project had reached "the stage in the progress of the Work when the Work or designated portion thereof is in general conformance with the design intent expressed in the architectural portion of the Construction Documents based upon the level of review set forth in the Architect's Contract such that the Owner can occupy or utilize the architectural portion of the Work for its intended use."  The certificate

21

further stated:  "The Owner accepts the Work or designated portion as substantially complete and will assume full possession."  The certificate noted that the "estimated cost of punchlist items" to finish all then-incomplete work on the relevant portion of the project was $883,040.  Consigli's final payment application dated January 31, 2021, listed the "Contract Sum to Date" as $140,197,379.50.  Consigli also submitted with its motion a press release and an article apparently printed from the internet, from the weeks before and after MSL's termination letter was sent, touting the fact that project facility was open for business and accepting residents.

MSL's sole argument for summary judgment -- that Consigli cannot prove any damages for wrongful termination -- is unpersuasive.  MSL notes that the Contract automatically converts any improper termination for cause into a termination for convenience and argues that the damages formula applicable to terminations for convenience entitles Consigli only to the same damages Consigli also claims for Counts One, Two and Four.  Section 14.4 entitles Consigli to "[d]irect costs for labor, materials, equipment and other services accepted under this Contract," and various other forms of costs, subject to the caveat that "[t]he total sum to be paid [to Consigli] under this Section shall not exceed the total Contract Sum as properly adjusted, reduced by the amount of payments otherwise made, and shall in no event include duplication of payment."  MSL interprets that to mean that Consigli can only recover funds sought by CR if those CRs turn out to be "proper[] adjust[ments]" to the Contract -- i.e., if Consigli prevails on Counts Two and Four.  But MSL evidently also contests its obligation to pay part of the Contract Sum sought in Count One, and even if MSL has a meritorious defense to Count One, that would not change the Contract Sum.  Thus, section 14.4 could provide an alternative basis for Consigli to recover for the enumerated costs at least up to the original Contract Sum amount.  Thus, it is

premature to decide that Count Seven is entirely duplicative of Counts One, Two and Four, particularly since Count One is not before the Court.

MSL cites two cases, both of which dismissed only those portions of plaintiffs' claims that were *inconsistent* with the contract's termination-for-convenience provision. *See Minelli Constr. Co., Inc. v. WDF Inc.*, 20 N.Y.S.3d 530, 530 (1st Dep't 2015) (dismissing "that portion of the complaint's first cause of action seeking recovery of lost profits"); *Lockheed Martin Transp. Sec. Sols. v. MTA Cap. Constr. Co.*, No. 09 Civ. 4077, 2014 WL 12560686, at *31 (S.D.N.Y. Sept. 16, 2014) (holding that the contract's automatic-termination provision barred claims for damages or rescission that were inconsistent with a termination for convenience). Those cases are distinguishable because MSL does not argue that Consigli seeks any form of damages or equitable relief that is barred under a termination for convenience.

Consigli argues that it is entitled to summary judgment because termination following substantial performance is wrongful as a matter of law. The rule on which Consigli relies requires "substantial performance" of the Contract, not merely substantial completion of the structure, though some cases use the latter as shorthand for the former. *See 845 UN Ltd. P'ship v. Flour City Architectural Metals, Inc.*, 813 N.Y.S.2d 404, 405 (1st Dep't 2006) (citing "[t]he substantial performance rule"). Consigli's argument is unpersuasive because a reasonable factfinder could conclude that Consigli did not "substantially perform" its contractual obligations. Among other issues, there is a triable issue of fact whether Consigli breached section 10.2.1 of the General Conditions to the tune of more than $7 million -- more than 5% of the $140 million price on which Consigli relies -- by failing to "take all necessary and required precautions for the safety of, and . . . provide reasonable protection to prevent damage, injury or loss to . . . other property at the side or adjacent thereto, such as . . . structures." A reasonable

factfinder also could find that Consigli materially breached the Contract by failing to pay its subcontractors and to bond off mechanics liens. Consigli argues that MSL's failure to pay *Consigli* excused Consigli's failure to discharge its own obligations, while MSL counters that its failure to pay was justified by the damage Consigli allegedly caused. Thus, this leads back to the same disputed factual question of whether Consigli in fact breached the contract by damaging adjacent buildings and failing to indemnify MSL for that damage.

Consigli also argues that MSL waived its right to terminate the contract and elected its remedies by failing to terminate Consigli sooner after Consigli damaged the adjacent buildings. This argument is unpersuasive. Even if MSL waived its right to terminate Consigli for causing the damage itself, that does not imply that MSL waived its right to seek indemnification and potentially to terminate the Contract for breach of that duty, nor that MSL waived its right to terminate Consigli for purportedly failing to pay subcontractors and bond off liens.

### C. Consigli's Motion for Summary Judgment on MSL's Contract Counterclaims

MSL asserts in a counterclaim that Consigli breached the Contract by failing to complete the project on schedule, failing to bond off mechanics' liens, and damaging adjacent buildings and failing to reimburse or indemnify MSL for related costs and liability. Consigli moves for summary judgment on that counterclaim. Consigli argues persuasively that some of the damages MSL seeks are barred by the Contract or because they were incurred by third parties. Consigli's motion is thus granted to the extent of limiting the damages MSL can seek as described below. Consigli's motion otherwise is denied as to MSL's counterclaim for breach of contract.

First, Consigli's motion is denied to the extent it relies on MSL's wrongful termination. Construing the evidence in favor of MSL as the non-moving party on Consigli's cross-motion, a reasonable factfinder could conclude that Consigli was terminated for cause for violating a

material provision of the Contract, including but not necessarily limited to the requirement that

Consigli "take all necessary and required precautions for the safety of, and . . . provide

reasonable protection to prevent damage, injury or loss to . . . other property at the side or

adjacent thereto, such as . . . structures."  It is therefore unnecessary to consider whether MSL is

barred, in case of a termination for convenience, from asserting a counterclaim for breach of

contract.

Second, MSL's contractual waiver of consequential damages bars some, but not all, of

MSL's claims for damage caused to adjacent property.  Under New York law, "[t]he distinction

between general and special contract damages is well defined but its application to specific

contracts and controversies is usually more elusive."  *Biotronik A.G. v. Conor Medsystems*

*Ireland, Ltd.*, 11 N.E.3d 676, 680 (N.Y. 2014) (internal quotation marks omitted).  In general:

> General damages are the natural and probable consequence of the breach of a
> contract.  They include money that the breaching party agreed to pay under the
> contract.  By contrast, consequential, or special, damages do not directly flow
> from the breach. . . . Lost profits may be either general or consequential damages,
> depending on whether the non-breaching party bargained for such profits and they
> are the direct and immediate fruits of the contract.

*Id.* (cleaned up).  There is insufficient evidence in the record to precisely delineate which

categories and amounts of damages are consequential, but some of the labels used by MSL

clearly fall on one side of the line.  As discussed above, Consigli undertook in the Contract to

prevent and remedy damage or loss to adjacent property and to indemnify MSL for the same.  A

reasonable finder of fact could conclude on that basis that certain costs of actually remedying

harm caused to adjacent property and resulting losses therefore may be recoverable as general

damages, if Consigli is found to be at fault.  But no reasonable factfinder could conclude that

other of MSL's claimed damages -- including lost profits on a hypothetical sale of the adjacent

property or related "carrying costs" -- bear the requisite "direct and immediate" relationship to

the breach to be recovered as general damages.  The boundary between actual and consequential damages for delay in finishing the project itself -- including MSL's claims for lease payments during the SWO, lost rent, etc. -- is more difficult to draw.  But for the reasons discussed below, that line need not be drawn now, because of the liquidated damages provision.

Third, all general and consequential damages for delay are limited by the Contract's liquidated damages provision, at section 2.3.6.1 of the A133.  Contrary to MSL's argument, no reasonable finder of fact could conclude that failure to achieve substantial completion by the agreed date is not "failure to achieve a milestone date."  To the extent MSL claims damages for lease payments, storage fees or other costs that ran up because the project lasted longer than hoped, or costs related to delays in accepting tenants, those claims are barred by section 2.3.6.1.

Fourth, Consigli is denied summary judgment on the basis of New York's anti-subrogation rule because there is no record evidence from which a finder of fact could conclude that the doctrine bars any of MSL's claims.  "[T]he antisubrogation rule would bar" one insured under a policy from asserting against another insured "a claim arising from the very risk for which the insured was covered." *Wausau Underwriters Ins. Co. v. Gamma USA, Inc.*, 89 N.Y.S.3d 186, 189 (2d Dep't 2018).  The anti-subrogation doctrine is an affirmative defense on which Consigli bears the burden of establishing its entitlement to judgment as a matter of law. *See Wilk v. Columbia Univ.*, 98 N.Y.S.3d 574, 575 (1st Dep't 2019).  MSL argues that Consigli waived the protection of the anti-subrogation rule by agreeing that its indemnification obligations would "not be limited in any way by any limitation on the amount or type of damages . . . or insurance," nor "limited by any obligation . . . or any insurance policy required to be obtained by the Contractor."  Consigli counters that the doctrine cannot be waived as a matter of law no matter how clear the Contract.  Even assuming Consigli is right, however, the anti-subrogation

26

doctrine bars only claims for losses that are covered by the Policy, and there is no record evidence showing whether the losses at issue are covered.

Fifth, MSL has standing to pursue this counterclaim to the extent MSL seeks damages caused to MSL, not to third-party affiliates of MSL. The fact that MSL does not own or lease the adjacent property and has not directly incurred liability to repair it does not categorically bar all claims related to damages to adjacent property on Article III standing grounds. To the extent damage to an adjacent property affected the project itself -- e.g., by causing delays or requiring additional work -- Article III standing is no barrier to MSL's recovery, though other barriers may exist. And to the extent MSL has been held accountable by any third party for any such damage, Article III standing is no barrier to MSL's ability to seek indemnification from Consigli.

That said, to the extent MSL asserts claims on behalf of third parties, MSL has not argued that it has third-party standing, only that third parties are listed in the Contract as "indemnitees." That might permit those third-party beneficiaries to assert their own indemnification claims against Consigli -- as at least one apparently has -- or to assign their claims to MSL. The contractual indemnification of third parties by Consigli does not, however, grant MSL a contractual right or Article III standing to pursue third parties' claims.

The record evidence is insufficient to determine precisely which categories and what portion of MSL's claimed damages are improperly sought on behalf of third parties. Consigli submitted only an affidavit asserting that a version of a damages summary document not before the Court lists categories that appear to be third-party damages. The specific contours of the available damages can be resolved at or before trial, but the parties are advised that several of the categories mentioned appear on their face to be clearly third-party damages -- e.g., "Carry Costs

of 303-305 Because of Non-Sale" and "Additional Lease Payment Cost for 1802 During Stop Work Orders" -- and other categories may or may not be depending on the facts.

> **D.      Consigli's Motion for Summary Judgment on MSL's Fraud Claim**

Consigli is granted summary judgment on MSL's fraud counterclaim.  There is no record evidence from which a trier of fact could find that MSL carried its burden of proving a knowing material misrepresentation by Consigli by clear and convincing evidence.

"The required elements of a common-law fraud claim are a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 106 N.E.3d 1176, 1182 (N.Y. 2018) (cleaned up).  MSL has the burden of proving its fraud claim by "clear and convincing" evidence, at trial and at summary judgment. Consigli, therefore, "has the burden of demonstrating an absence of clear and convincing evidence substantiating [MSL's] claim." *Integrated Constr. Enters., Inc. v. GN Erectors, Inc.*, No. 16 Civ. 5561, 2020 WL 614991, at *6 (S.D.N.Y. Feb. 10, 2020) (cleaned up).  On the one hand, "[t]his evidentiary standard demands a high order of proof and forbids the awarding of relief whenever the evidence is loose, equivocal or contradictory.  This means that fraud will not be assumed on doubtful evidence or circumstances of mere suspicion." *Id.* (internal quotation marks omitted).  On the other hand, "[c]lear and convincing evidence may . . . be circumstantial, even on summary judgment." *Id.*  Courts consider summary judgment "skeptically in cases alleging fraud because the issues typically turn on the parties' credibility as to their state of mind," and "den[y] summary judgment where a plaintiff demonstrated the existence of specific facts from which a jury might infer that defendants engaged in a scheme to plot or defraud." *Id.* (cleaned up).

Consigli is entitled to summary judgment on MSL's fraud claim because MSL has not put forward any evidence that Consigli actually made a false statement of fact.  MSL argues, and its employees affirm, that its *understanding* during Contract negotiations was that Consigli would charge MSL only for its actual costs of various forms of insurance on the project, without building a profit margin into the amount charged.  MSL argues that this "understanding" was supported by various emails in which Consigli employees refer to the insurance amounts as either "costs" or "premiums," or where MSL employees do so and Consigli employees do not correct them.  But MSL also emphasizes that the Contract was meant to be based on "actual costs" and concedes that there are "costs" to Consigli associated with insurance beyond premiums alone, such as deductibles.  None of the emails cited reflects an actual representation by anyone at Consigli that MSL was being billed only for the premiums that Consigli paid out to insurers to the exclusion of those other costs.

Rather, the emails are consistent with the arrangement described in the Contract:  MSL paid Consigli a "stipulated" or "agreed-upon rate" for insurance, and once Consigli received that payment, Consigli was "responsible for all deductibles."  The Contract spells out narrow circumstances in which Consigli could charge MSL more for insurance:  "[i]f additional trade contractors become enrolled, or the Scope of Work increases."  Consigli thus bore the downside risk that, under the existing scope, insurance claims would exceed the parties' expectations embodied in the "stipulated rates."  Consigli might have also borne some upside potential, from the possibility that claims would be lower than expected, but there is no evidence suggesting that the insurance charge guaranteed Consigli a profit.  At most, the emails cited by MSL demonstrate that people sometimes loosely referred to the insurance charges billed to MSL as

"premiums." Such "loose, equivocal, or contradictory" evidence is insufficient to survive summary judgment. *See Integrated Constr.*, 2020 WL 614991, at *6.

MSL also argues that, even assuming Consigli made no affirmative misrepresentation, it had a duty to disclose that the insurance charges included more than premiums alone. MSL does not argue that Consigli's duty to disclose arose from a partial disclosure of "half of the truth," or from a fiduciary relationship, but rather because Consigli had "superior knowledge, not readily available to [MSL], and kn[ew] that the [MSL was] acting on the basis of mistaken knowledge." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *see Jana L. v. W. 129th St. Realty Corp.*, 802 N.Y.S.2d 132, 134 (1st Dep't 2005). Under New York law, "absent a fiduciary relationship between the parties, a duty to disclose arises only under the special facts doctrine where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." *Jana L.* 802 N.Y.S.2d at 134 (cleaned up). Even assuming the facts at issue here are sufficiently essential to the transaction, the record does not contain evidence of a duty to disclose. There is no record evidence that information about insurance premiums was not readily available to MSL. While MSL asserts that it was acting in reliance on a mistaken view of the facts, there is no record evidence that Consigli knew of MSL's mistake. *Cf. Brass*, 987 F.2d at 150 (requiring knowledge on the part of defendant).

Because no reasonable finder of fact could find by clear and convincing evidence that Consigli made a misrepresentation or breached a duty to disclose, Consigli's motion for summary judgment is granted on MSL's fraud counterclaim.

### E. Consigli's Motion for Summary Judgment on MSL's Lien Law Counterclaim

Consigli is granted summary judgment on MSL's willful exaggeration of lien claim. Under New York Lien Law section 39, "[i]n any action or proceeding to enforce a mechanic's

lien . . . or in which the validity of the lien is an issue," if the court finds the lien willfully exaggerated, the lien is void.  Section 39-A provides that, "[w]here in any action or proceeding to enforce a mechanic's lien" such lien is found to have been willfully exaggerated, "the person filing such notice of lien shall be liable in damages to the owner or contractor."  Because Consigli has not sought to enforce a mechanic's lien, MSL cannot assert a counterclaim for damages for willful exaggeration under section 39-A.  Even if this were an action "in which the validity of the lien is an issue" under section 39, MSL could not assert a damages claim under section 39-A.  In any event, this is not an action "in which the validity of the lien is an issue" simply because MSL alleges that liens were exaggerated in support of other counterclaims. Those allegations stand on their own, and whether the liens are "void" under section 39 is irrelevant to MSL's other counterclaims.  MSL has not explained why a declaration that the liens are void would constitute an adjudication of any disputed rights, rather than an advisory opinion.

## IV.  CONCLUSION

For the foregoing reasons, MSL's motion for summary judgment is GRANTED in part and DENIED in part, and Consigli's motion for summary judgment is GRANTED in part and DENIED in part.  Specifically, MSL's motion is GRANTED as to those portions of Count Two that seek damages for CR-534, CR-633 non-design-related delays under CR-351 and those portions of Count Four that seek damages for CR-47, CR-52 and CR-136 and otherwise is DENIED.  Consigli's motion is GRANTED as to MSL's fraud and willful exaggeration of lien counterclaims and only that portion of MSL's breach of contract counterclaim that seeks consequential or delay damages or damages incurred by third parties and otherwise is DENIED.

For clarity, Consigli's remaining claims are Count One; those portions of Count Two that pertain to CR-450, CR-471, CR-553r1, CR-617, CR-45, CR-144, CR-544, CR-689, CR-714,

CR-687 and only the design-related delays covered by CR-351; those portions of Count Four that pertain to CR-12, CR-42 and CR-170; and Count Seven.

MSL's remaining counterclaims are Count One, except to the extent MSL seeks consequential or delay damages or damages incurred by third parties, and Count Three, which was not at issue on this motion.

The Clerk of Court is respectfully directed to close the motion at Docket Number 195.

Dated: February 8, 2022
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE